UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80334-CIV-MARRA

FELICIA MITCHELL, in her individual capacity
and as Personal Representative of the Estate of
HENRY BENNETT, III, deceased; and
HENRY BENNETT, in his individual capacity,

Plaintiff,

vs.

SHERIFF RIC BRADSHAW, Sheriff of Palm Beach
County, Florida in his official capacity and
ANDREW CANO, Deputy Sheriff in his individual
capacity,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion to Dismiss Counts III, IV, V and VII of the First Amended Complaint (DE 12). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiffs Felicia Mitchell, individually and as personal representative of the estate of Henry Bennett, III, deceased, and Henry Bennett, individually, (collectively, "Plaintiffs") bring this seven count First Amended Complaint ("FAC") against Defendants Sheriff Ric Bradsaw (the "Sheriff") and Palm Beach County Sheriff's Officer Andrew Cano ("Cano") (collectively, "Defendants") for a violations of the Fourth and Fourteenth Amendments of the United States Constitution pursuant to section 42 U.S.C. 1983 against Cano (count one) and the Sheriff (count two); a violation of the substantive due process clause of the Fourteenth Amendment pursuant to

section 42 U.S.C. 1983 against Cano (count three) and the Sheriff (count four); negligence against the Sheriff (count five); battery against Cano (count six) and battery against the Sheriff (count seven).

According to the allegations of the FAC, Henry Bennett III (the "decedent") was a nineteen year old man who was shot by Defendant Cano on January 16, 2016 during a traffic stop. (FAC ¶ ¶11-12.) As soon as decedent stopped his vehicle, decedent opened his door and ran "full speed away" from both the vehicle and Defendant Cano. Decedent did not pose any risk to Defendant Cano nor to any other person or citizen. At all times during the incident, decedent ran in the opposite direction of Defendant Cano. Video footage of the shooting confirms that within 2-4 seconds of decedent exiting the vehicle, Defendant Cano began to fire shots; ultimately shooting him four times in the head, chest, and back. (FAC ¶ 13.)

The Sheriff has attempted to justify and to cover-up the shooting of decedent. (FAC ¶ 15.) Defendant Cano's prior use of excessive force placed the Sheriff on notice of Defendant Cano's propensity to violate the constitutional rights of citizens. Furthermore, the Sheriff was notice of Defendant Cano's conduct based on an internal system in the Sheriff's Office. Nonetheless, Defendant Cano's use of excessive force was ignored or improperly handled by supervisors. (FAC ¶¶ 16, 108.) The Sheriff failed to properly train and discipline Defendant Cano. (FAC ¶17.)

Counts three and four of the FAC allege constitutional violations of decedent's parents Fourteenth Amendment rights to a familial relationship with decedent. In moving to dismiss these counts, Defendants contend that, on January 16, 2016, the law was not clearly established that a constitutional right to a familial relationship existed. With respect to the negligence claim

against the Sheriff, Defendants assert that the Sheriff is immune for decisions relating to the training programs or supervision of deputy sheriffs. Defendants also argue that, to the extent this claim is also brought as a wrongful death claim, it must be brought as a separate claim. Lastly, with respect to the battery claim against the Sheriff, Defendants contend the claim is internally inconsistent.

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467

U.S. 69, 73 (1984).

III. Discussion

A. Substantive due process claims based on familial relationship (counts three and four)

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages if his or her conduct "does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Qualified immunity may be raised in a motion to dismiss. Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002).

For qualified immunity to apply, the public official must first show that he or she "was acting within the scope of his or her discretionary authority." Moore v. Pederson, 806 F.3d 1036, 1042 (11th Cir. 2015) (en banc). The term "discretionary authority" "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Id. (alteration in original) (quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)).[1]

Once it is established that the governmental official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. Moore, 806 F.3d at 1042. To satisfy this burden, the plaintiff must show that (1) the facts demonstrate that the governmental official violated his constitutional right and (2) the

---

[1] The FAC alleges that Defendant Cano and the Sheriff were acting in the scope of their discretionary duties. (FAC ¶¶ 79, 88.)

4

right was clearly established at the time of the government official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court may address these inquiries in whichever order it chooses. Id. at 242.

The Supreme Court has held "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This does not mean that "the very action in question" must have "previously been held unlawful." Id. Rather, it means "that in the light of pre-existing law the unlawfulness must be apparent." "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and the Supreme Court has held that qualified immunity applies in such cases. Id. at 641.

Either case law existing at the time of the alleged violation or specific constitutional or statutory provisions may clearly establish the law such that a government official can be put on notice that his actions will violate a constitutional or statutory right. See Goebert v. Lee Cty., 510 F.3d 1312, 1330 (11th Cir. 2007); Vinyard v. Wilson, 311 F.3d 1340, 1350–51 (11th Cir. 2002). When the words of a pertinent statute or constitutional provision are relied upon in the absence of case law, they must apply with "obvious clarity." Vinyard, 311 F.3d at 1350. Regarding case law, the Eleventh Circuit has held that only "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state" can clearly establish the law. Marsh v. Butler Cty., 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc), abrogated on other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

The issue before the Court is whether it was clearly established at the date of this incident that a parent of an adult child has a protected constitutional interest in a continued relationship with that child. As correctly pointed out by Defendants, the Eleventh Circuit has addressed this exact question in Robertson v. Hecksel, 420 F.3d 1254, 1255 (11th Cir. 2005). In that case, a mother of a man fatally shot by a police officer alleged a substantive due process violation. Id. at 1255. In addressing the mother's claim, the Court stated:

> Whether a parent has such a right [namely, a liberty interest in a continued relationship with an adult son] vis-a-vis her adult child is a question of first impression for this Court. We hold that the Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son….

Id.

Plaintiffs respond by citing to cases from outside this jurisdiction that have held otherwise. (Resp. at 3-5.) These cases, however, are not binding on this Court, whereas Robertson is. As for the Plaintiffs' reliance on Bendiburg v. Dempsey, 909 F.2d 463 (11th Cir. 1990), the Court rejects this comparison. That case addressed the state's right to legal custody over a minor child who needed controversial medical care. Id. at 466. After the medical procedure was performed, custody was returned to the father, and the minor child died. Id. The Court held that the father did not have a substantive due process claim against the defendant department of family and children services. Id. at 468. Moreover, to the extent Bendiburg may have any relevance to this case, it was decided before Robertson which addressed the precise issue presented here.

For these reasons, the Court grants the motion to dismiss counts three and four of the FAC.

B. Negligence against the Sheriff (count five)

Defendants argue that sovereign immunity applies to the negligence claim because the Sheriff

is "immune from suit for decisions regarding what subject matters to include in a training program or by policy or in discipline, including how the Sheriff's Office should train deputies and supervise them, or require specific training before allowing [d]eputies . . . to work." (Mot. at 10.)

The Eleventh Circuit explained Florida sovereign immunity law in <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1117-18 (11th Cir. 2005):

> [U]nder Florida law, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1266 (11th Cir. 2001) citing <u>Dep't of Health & Rehabilitative Servs. v. Yamuni</u>, 529 So. 2d 258, 260 (Fla.1988). As the Supreme Court of Florida has explained recently, "if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. In making this assessment, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. As this Court has determined, basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." <u>Pollock v. Fla. Dep't of Highway Patrol</u>, 882 So.2d 928, 933 (Fla. 2004) (citation omitted).
>
> A discretionary function, under Florida law, is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." <u>Henderson v. Bowden</u>, 737 So.2d 532, 538 (Fla.1999) (citation and internal quotation marks omitted). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." <u>Id.</u> (citation and internal quotation marks omitted). Florida's discretionary function exception to its general waiver of sovereign immunity "is grounded in the doctrine of separation of powers," and "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government, including the agencies and municipal corporations they have created." <u>Kaisner v. Kolb</u>, 543 So.2d 732, 736-37 (Fla.1989).

<u>Cook</u>, at 1117-18.

Based on this discussion, the Court in <u>Cook</u> determined that the plaintiff's challenged actions, which concerned the sheriff's decisions regarding the training of its officers and the subject

matter to include in the training, were discretionary governmental functions immune from legal actions. Id. at 1118. On the other hand, the Eleventh Circuit has found that when a plaintiff challenges the implementation of a training program as opposed to the content of the program, sovereign immunity does not apply to that operational act. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005); Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001).

The Court finds that there are allegations in the FAC that may go to operational functions. By way of example, the FAC alleges that the Sheriff had a system in place to alert the administration to deputies who engaged in excessive force but these alerts were ignored or mishandled. (FAC ¶ 108.) Because of the early stage of this proceeding, the Court cannot determine, as a matter of law, whether the practices challenged fall under discretionary or operational functions. Therefore, the Court will allow this claim to proceed and Defendants may renew this argument with the benefit of a full record.

To the extent that count five attempts to bring a wrongful death claim against Defendant Cano (see FAC ¶¶ 114, 117), this claim must be pled in a separate count. See Rule 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."); see also Vilceus v. City of West Palm Beach, No. 08–80968–CIV, 2009 WL 2242604, at * 5 (S.D. Fla. July 27, 2009) (each count in the complaint should contain one claim founded upon a separate transaction). Lastly, while not entirely clear, it appears that Plaintiffs seek to bring a claim for negligent handling of a firearm (Resp. at 14). The facts alleged do not support such a claim. The Court will give Plaintiffs leave to amend to include this claim, assuming they can do so in good faith.

Thus, count five, to the extent it asserts a claim for negligence relating to the implementation of training, may proceed. As to the other aspects of count five unrelated to the implementation of graining, Plaintiffs are given leave to amend to include additional counts for wrongful death and negligent handling of a firearm in separate counts.

C.  Battery against the Sheriff (count seven)

Defendants move to dismiss this count because it is internally inconsistent. Specifically, Defendants point out that this count incorporates paragraph 122 of the FAC (see FAC ¶ 126) which alleges that "Defendant Cano acted intentionally, in bad faith or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property." (FAC ¶ 122.) At the same time, this count alleges "Defendant Cano acted intentionally, but not in bad faith or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, and/or property." (FAC ¶ 144.)[2] Simply put, the Court cannot ascertain the allegations of this count and therefore cannot address its sufficiency. Plaintiff is granted leave to re-plead this count.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Counts III, IV, V and VII of the First Amended Complaint (DE 12) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is granted leave to amend consistent with the dictates of this Order. The Second Amended Complaint should be filed **within 14 days of the date of entry**

---

[2] The FAC is missing paragraphs 130-143.

**of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of June, 2017.

_____
KENNETH A. MARRA
United States District Judge